IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:17-CR-00060-D-1

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| VINCENT GLEN LOCKLEAR, | ) |
| | ) |
| Defendant. | ) |

On April 19, 2021, Vincent Glen Locklear ("Locklear" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582). [D.E. 125]. On July 24, 2021, Locklear, through counsel, filed a memorandum in support [D.E. 128]. On August 6, 2021, the United States responded in opposition [D.E. 130]. As explained below, the court denies Locklear's motion.

I.

Locklear is a violent recidivist. See Presentence Investigation Report ("PSR") [D.E. 75] ¶¶ 10–31. On September 11, 2017, pursuant to a written plea agreement, Locklear pleaded guilty to robbery of money and other property of the United States and aiding and abetting in violation of 18 U.S.C. § 2114(a) and 18 U.S.C. § 2, and brandishing a firearm in connection with a crime of violence and aiding and abetting in violation of 18 U.S.C. § 924(c), 18 U.S.C. § 924(c)(1)(A)(ii), and 18 U.S.C. § 2. See [D.E. 4, 55, 75]. On April 18, 2018, Senior United States District Judge Malcolm J. Howard held a sentencing hearing. See [D.E. 111]. Judge Howard adopted the facts set forth in the PSR and addressed Locklear's objection. See PSR Add. [D.E. 75]; Fed. R. Crim. P.

32(i)(3)(A)–(B). Judge Howard calculated Locklear's offense level to be 31, his criminal history category to be VI, and his advisory guideline range to be 272 to 319 months' imprisonment. After granting the government's downward departure motion and thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), Judge Howard sentenced Locklear to 100 months' imprisonment on count two, and 84 months' consecutive imprisonment on count three, for a total sentence of 184 months' imprisonment. See [D.E. 113] 2.

On April 19, 2021, Locklear moved for compassionate release [D.E. 125] and to appoint counsel [D.E. 124]. On April 28, 2021, the court granted Locklear's motion to appoint counsel. See [D.E. 126]. On April 29, 2021, Locklear's case was reassigned to the undersigned. On August 5, 2021 the government responded in opposition to Locklear's motion for compassionate release. See Resp. in Opp'n [D.E. 130].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a

2

sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states that

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

   (A) Medical Condition of the Defendant.—

   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii) The defendant is—

   (I) suffering from a serious physical or medical condition,

   (II) suffering from a serious functional or cognitive impairment, or

3

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not

---

>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) Family Circumstances.—
>
>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

4

updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G. § 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

Locklear seeks compassionate release. See [D.E. 125, 128]. According to the Bureau of Prisons ("BOP"), Locklear has exhausted his administrative remedies. [D.E. 130] 4. Accordingly, the court addresses Locklear's motion on the merits.

In support of his motion, Locklear cites the COVID-19 pandemic, his hypertension, Type 2 diabetes, shoulder pain, "untreated mental health problems[,]" his rehabilitative efforts, his supportive family, and his spouse's incapacitation and need for care due to a car accident. [D.E. 128] 7–8; see [D.E. 125, 232].

5

The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Locklear argues that his high blood pressure, diabetes, and "untreated mental health problems" warrant compassionate release to allow him "self-isolate and better protect himself from COVID-19 " and to "get the mental health treatment that BOP has failed to provide." [128] 6–7. Locklear also notes that the Centers for Disease Control and Prevention lists diabetes and "serious heart conditions" as medical conditions that may place a person at heightened risk of serious infection from COVID-19. Id. at 4–5. Locklear alleges without detail or substantiation that BOP has failed to "test his blood" despite his high blood pressure and diabetes. [D.E. 125] 3.

Locklear has failed to demonstrate that the BOP cannot treat his hypertension and diabetes. Moreover, Locklear fully recovered from an asymptomatic COVID-19 infection in February, 2021, and now has natural antibodies from COVID-19. See [D.E. 131-3]. Locklear also is fully vaccinated against COVID-19. See [D.E. 131-1]; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); see also United States v. Baeza-Vargas, No. CR-10-448-010-PHX-JAT, 2021 WL 1250349, at *3–4 (D. Ariz. Apr. 5, 2021) (unpublished) (collecting cases showing the "growing consensus" of district courts denying compassionate release when an inmate is vaccinated against COVID-19). Locklear's natural antibodies and vaccination reduce Locklear's risk of serious infection. Locklear also has not provided any records or specific details related to the nature or symptoms of his "untreated mental health problems," and he has not detailed any efforts to receive

6

mental health treatment from BOP. Accordingly, reducing Locklear's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "family circumstances" policy statement, the policy statement requires "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). Locklear claims that his spouse is incapacitated due to a car accident and that he is the only available help for her and for his children. [D.E. 125] 1. Courts have looked to a BOP Program Statement issued for guidance in reviewing requests based on the incapacitation of a spouse or family member caregiver. See, e.g., United States v. Bolden, No. CR16-320-RSM, 2020 WL 4286820, at *4 (W.D. Wash. July 27, 2020) (unpublished), appeal dismissed, No. 20-30168, 2020 WL 6580183 (9th Cir. Aug. 26, 2020); United States v. Collins, No. 15-10188-EFM, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (unpublished) (noting that although the Program Statement is specifically meant for use by BOP, it "provide[s] guidance for courts as well"); cf. United States v. Burrell, No. 15-CR-95 (AJN), 2020 WL 7646887, at *2 (S.D.N.Y. Dec. 23, 2020) (unpublished) (acknowledging that a court may find an extraordinary and compelling reason other than those in the Application Notes and BOP guidance).

BOP's Program Statement for family circumstances defines, "spouse" as "an individual in a relationship with the inmate, where that relationship has been legally recognized as a marriage, including a legally-recognized common-law marriage." BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 9. "'Registered partner' means an individual in a relationship with the inmate, where that relationship has been legally recognized as a civil union or registered domestic partnership." Id. at 10. "The relationship should have been

7

established before the inmate's offense date of arrest, and should be verified by information in the PSR or other administratively acceptable documentation (e.g. marriage certificate)." Id. Locklear's motion refers to his partner as his "spouse" and contains medical records consistent with injuries to this individual. See [D.E. 125, 125-1]. However, Locklear's memorandum in support of his motion for compassionate release refers to the individual as his "fiancé" consistent with earlier records in the case. [D.E. 128] 7; PSR ¶ 43. Locklear has not provided any documentation that he and his fiancé married before or after his incarceration. Therefore, Locklear's fiancé does not qualify as a spouse or registered partner under the BOP's Program Statement.

Even assuming that Locklear's fiancé qualified as a spouse or registered partner for the purposes of the Program Statement, Locklear has failed to show that the family circumstances factor applies in his case. The Program Statement defines "incapacitation" as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse ... is completely disabled, meaning that the spouse ... cannot carry on any self-care and is totally confined to a bed or chair." BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 10. The Program Statement also provides for incapacitation as a result of a "severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair." Id. It also explains that when evaluating the incapacitation of a spouse, the inmate must provide "adequate information and documentation" including, but not limited to, a statement and verifiable medical documentation regarding the spouse's incapacitation, a statement and letters of documentation that the inmate is the only family member capable of caring for the spouse, and a statement and documentation regarding the inmate's release plan. Id. For requests based on incapacitation of the caregiver to a defendant's minor child, "incapacitation" is defined as "suffered

8

a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." Id. at 7–8; see United States v. Bolden, No. CR16-320-RSM, 2020 WL 4286820, at *4. Again, the Program Statement states that information and documentation must show the incapacitation of the caregiver, that the caregiver is the only family member capable of caring for the child, verifiable documentation that the inmate is the parent of the child, verifiable documentation providing name and age of the child, and a release plan. Id. Locklear provided some medical records and has some release plan details that include residing with his fiancé and "pursu[ing] a job and trade certification" and "work[ing] with the youth in the community to speak with at risk youth regarding life and making choices to keep them out of state and federal prison system." [D.E. 128] 7; [D.E. 125-1] 5–13. These records do indicate that Locklear's fiancé with whom one of his children lives, was treated for serious injuries in March, 2021. [D.E. 125-1] 5–13.[2] However, the records indicate that the treatment was going well and the procedures were successful. Id. Locklear has not provided records indicating that his fiancé was or is currently "totally confined to a bed or chair" and "cannot carry on any self-care." Locklear also has not provided any records indicating that he is the only family member capable of caring for his fiancé and child. Accordingly, his family circumstances are not extraordinary and compelling and reducing Locklear's sentence is inconsistent with application note 1(C). See 18 U.S.C. § 3582(c)(1)(C).

---

[2] When the court sentenced Locklear in 2018, the child he shares with his fiancé was 14 or 15 years old and lived with the child's mother. See PSR ¶ 43 (noting the date of the PSR as November 22, 2017). Now this child would either have reached the age of 18 or be on the cusp of doing so. This fact undermines accepting Locklear's argument concerning the "incapacitation of the caregiver of the defendant's minor child." Locklear's other minor children were not shared with the injured fiancé and are not relevant to this argument.

9

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Locklear's hypertension and diabetes are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, Locklear has natural antibodies and is fully vaccinated, thereby reducing the weight of that assumption. Cf. Broadfield, 5 F.4th at 803. Regardless, the section 3553(a) factors counsel against reducing Locklear's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Locklear is 36 years old and is incarcerated for robbery of money and other property of the United States and aiding and abetting and for brandishing a firearm in connection with a crime of violence and aiding and abetting. See PSR ¶¶ 1–7. Locklear participated in the violent robbery of a confidential informant who was physically restrained during the incident. See id. ¶¶ 15, 60. He organized and acted as a leader in the commission of the robbery. See id. ¶ 11–12, 63. Locklear also used a 16 year old minor to commit the robbery. See id. ¶ 11–15, 62. When he was sentenced at 32 years' old, Locklear was a career offender[3] and violent recidivist with convictions for robbery, larceny (three counts), injury to personal property, communicating threats (two counts), assault on a female, assault with a deadly weapon, and robbery with a dangerous weapon. See id. ¶¶ 20–31.

---

[3] In 2001, at age 16, Locklear was convicted of common law robbery in Robeson County, North Carolina. See PSR ¶ 20. At sentencing, Judge Howard granted Locklear's motion for downward variance because under current North Carolina law this offense would have been a juvenile offense and would not have been a career offender predicate.

10

Locklear has made some positive steps while incarcerated. See [D.E. 128] 7–8. Locklear, however, also has had disciplinary infractions while incarcerated including infractions for assaulting without serious injury and refusing to obey an order in 2019, and for disruptive conduct, threatening bodily harm and failing to stand for a count in 2018. See [D.E. 130-1].

The court must balance Locklear's mixed record while incarcerated with the extraordinary seriousness of his history of violent crime. The court has also considered Locklear's potential exposure to COVID-19, medical conditions, and release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court recognizes Locklear has a supportive loved ones who would help him if released, though Locklear has provided the court scant details about his release plan. See [D.E. 128] 7–9. Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to treat Locklear, the section 3553(a) factors, Locklear's arguments, the government's persuasive response, and the need to punish Locklear for his serious criminal behavior, to incapacitate Locklear, to promote respect for the law, to deter others, and to protect society, the court denies Locklear's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Locklear's request for home confinement, see [D.E. 128] 4–6, 9 and [D.E. 125], Locklear seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement

11

remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Locklear requests that the court merely recommend home confinement to the BOP, the court declines. See [D.E. 128] 4–6, 9. Thus, the court dismisses Locklear's request for home confinement.

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 125], and DISMISSES defendant's request for home confinement.

SO ORDERED. This 2 day of November, 2021.

JAMES C. DEVER III
United States District Judge